[Cite as *In re C.T.*, 2020-Ohio-579.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE CA.T., ET AL.                   :
                                      :               No. 108969
Minor Children                        :
                                      :
[Appeal by C.T., Mother]              :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD17914571, AD17914572, AD17914573, AD17914574, and AD17914575

### *Appearances:*

Dale M. Hartman, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* C.C.D.C.F.S.

RAYMOND C. HEADEN, J.:

{¶ 1} Appellant C.T. ("Mother") appeals from a juvenile court judgment granting permanent custody of her children, Ca.T., J.B., Ta.B., Tr.B., and C.B., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). For the reasons that follow, we affirm the juvenile court's judgment.

**Procedural and Substantive History**

**{¶ 2}** On September 25, 2017, CCDCFS filed a complaint for abuse,[1] dependency and temporary custody of Ca.T. (d.o.b. May 9, 2003), J.B. (d.o.b. May 9, 2005), Ta.B. (d.o.b. Dec. 13, 2006), Tr.B. (d.o.b. Jan. 22, 2009), and C.B. (d.o.b. Jan. 7, 2011). The agency also filed a motion for emergency predispositional custody.

**{¶ 3}** The agency's complaint alleged that the children were previously adjudicated abused and neglected due in part to a domestically violent relationship between Mother and her boyfriend, who lived with Mother and the children. As a result of this adjudication, the children were in the agency's custody from June 2014 until July 2016. The complaint alleged that Mother lacked appropriate judgment and parenting skills to be able to provide a safe home for the children, and that she continued to maintain a relationship with an abusive partner. The complaint further alleged that there was frequent police activity at the home due to violence and alcohol abuse by Mother's boyfriend. Finally, the complaint alleged that Mother failed to adequately supervise the children. With respect to paternity, the complaint alleged that Ca.T.'s father was unknown and has failed to establish paternity or support, visit, or communicate with Ca.T. since her birth. The complaint also alleged that the father of the other four children was deceased.

---

[1] The allegations of abuse related to Tr.B. and not to the other four children. The complaint alleged that on or about September 6, 2017, Mother's boyfriend initiated a physical altercation. The boyfriend struck a window in the home, causing Tr.B. to be struck by a fan. Mother also suffered injuries to her face as a result of the altercation.

{¶ 4} A case plan was filed on October 13, 2017. The case plan outlined goals for the boyfriend, including completing a mental health assessment with specific emphasis on domestic violence concerns and completing an alcohol assessment. Mother's case plan goal was to complete a domestic violence assessment. The case plan noted that Mother and her boyfriend did not agree with the agency's concerns regarding domestic violence and substance abuse issues in the home.

{¶ 5} The court held a hearing on October 13, 2017. In an October 16, 2017 journal entry, the court acknowledged that the parties had agreed to hold the agency's motion for predispositional custody in abeyance, and that the parties agreed to a no-contact order between Mother's boyfriend and the children. The court also appointed a guardian ad litem ("GAL") for the children.

{¶ 6} On November 1, 2017, the court held a hearing. According to an agency witness, the agency had requested urine screens of both Mother and her boyfriend, and Mother's most recent screen was insufficient for testing purposes. The social worker on the case testified that the agency had requested urine screens from Mother three times since her insufficient screen and Mother had not complied. The boyfriend's screen came back positive for cocaine, and he was not currently living with the family because of the no-contact order. The social worker testified that Mother had recently obtained a new residence, but not all of the utilities were turned on. Finally, the social worker testified that Mother did not appreciate the significance of the domestic violence issues in the home. The court granted the

agency's motion for predispositional custody and ordered Mother to submit to a urine screen.

{¶ 7} The court held a hearing on November 22, 2017. The corresponding journal entry noted that the agency was unable to place the children in family care, but they were placed in a therapeutic foster home. The journal entry also noted that Mother completed a urine screen on November 4, 2017, tested positive for cocaine, and was referred for substance abuse treatment.

{¶ 8} The children's GAL filed a report on December 14, 2017. The report stated that Mother had visited the children and told the children that they did not have to listen to their foster parents. The report also reflects that the children were ultimately placed in separate foster homes. Ca.T. was placed in a foster home in Shaker Heights, Ta.B. and C.B. were placed in a different foster home, and J.B. and Tr.B. were placed in a third foster home. According to the GAL report, Ca.T.'s foster mother reported that sometimes Mother would drop Ca.T. off from school. The GAL report stated that Ca.T., Ta.B., and C.B. all stated that they wanted to go home to their mother. The GAL was unable to conduct a visit with J.B. and Tr.B. prior to filing this report because the boys were moved to another foster home because of disruptive behavior. Ultimately, the GAL recommended that it was in the children's best interest to be placed in the agency's temporary custody.

{¶ 9} On December 18, 2017, the agency filed an amended complaint. Following a hearing that day, on January 3, 2018, the magistrate adjudicated the

children abused.  The trial court adopted the magistrate's decision on January 4, 2018.

{¶ 10} According to a January 18, 2018 journal entry following a hearing, Mother was referred to domestic violence classes, referred to Recovery Resources for substance abuse treatment, and her case plan was amended to include a psychological evaluation due to past mental-health issues.

{¶ 11} On March 14, 2018, a semiannual review ("SAR") was filed.  The review noted that in contravention of the case plan goal to not expose the children to domestic violence, Mother was again living with her boyfriend.  The review also noted that Mother completed a substance-abuse assessment but had not been compliant with case-plan objectives since January 2018.  The review stated that Ca.T. went AWOL on February 22, 2018, and upon her return six days later was placed with her maternal great-grandparents.

{¶ 12} On March 20, 2018, the GAL filed an updated report.  The GAL noted that Mother had not yet started domestic violence counseling, engaged in substance abuse services, or gotten a mental-health evaluation.  The GAL recommended that temporary custody was in the children's best interest.

{¶ 13} On September 2, 2018, the GAL again filed an updated report.  At the time, each child had been placed in a separate foster home.  As of the date of the report, Ca.T. was AWOL again.  The GAL stated that it had "been reported" that Ca.T. was staying with Mother, who had been homeless since June 2018.  The GAL report noted that Mother's visitation with the children was sporadic, and that during

visits, Mother openly encouraged the children's unruly behavior. Mother had participated in substance abuse treatment through Recovery Resources but did not complete the program, and the last urine screen Mother submitted to the agency was in January 2018. The GAL again recommended that temporary custody was in the children's best interest.

{¶ 14} On September 6, 2018, the agency filed a motion to modify temporary custody to permanent custody. On September 17, 2018, a SAR was filed, describing Mother's insufficient progress toward her case plan goals, her housing instability, and her boyfriend's noncompliance with the case plan.

{¶ 15} On November 9, 2018, the agency filed an amended case plan. The case plan included a request for an emergency suspension of visitation due to safety concerns for the children, an updated placement for C.B., and a report that J.B. was AWOL.

{¶ 16} On February 26, 2019, the court appointed counsel to represent the children. On March 20, 2019, a SAR was filed. The SAR's case review summary stated that Ca.T., who had been AWOL since July 2018, and J.B., who had been AWOL since October 2018, were found with Mother in January 2019. As a result, Mother was charged with two counts of interfering with custody.

{¶ 17} On May 7, 2019, the GAL filed an updated report, noting that Mother had not consistently engaged with substance abuse, domestic violence, or mental health services in accordance with her case plan. Further, Mother had not maintained stable housing and, as of the date of the GAL report, Mother's

whereabouts were unknown to the agency. The GAL report detailed the children's placements and wellbeing and reported that J.B. reported that he did not wish to return home to Mother, that Ta.B. and C.B. have reported that they would like to return home to Mother, and that Tr.B. stated that he would like to be reunited with Mother but did not think that would happen. The GAL recommended that temporary custody was in the children's best interest.

{¶ 18} The court held a trial in this matter on August 5, 2019.

{¶ 19} The agency called a social work supervisor as its witness, who testified that she had been assigned to the case as a supervisor in October 2017. She testified that when J.B. and Ca.T. were found after being AWOL for several months, they were discovered to have been living in a hotel with Mother in Middleburg Heights, Ohio. With respect to Mother's housing instability, the witness further testified that since the time of Mother's eviction from her home in June 2018, the agency was unable to assess any of her subsequent residences. With respect to the substance abuse case-plan goals, the witness testified that Mother was working with Ohio Guidestone and had completed 13 of the 36 sessions she should have completed since beginning the program and had failed to provide the agency with a urine screen since January 2018. Mother did provide a negative urine screen to Ohio Guidestone in June 2018.

{¶ 20} The GAL also testified at trial and recommended that the agency be awarded permanent custody of the children. The court also accepted documentary

evidence from the agency, including copies of Mother's convictions for interfering with custody.

{¶ 21} The court granted the agency's motion for permanent custody of the children. In an August 9, 2019 journal entry, the court found that the agency proved the allegations of its motion by clear and convincing evidence. Specifically, the court found that, pursuant to R.C. 2151.414(B)(1):

> The [children are] not abandoned or orphaned or [have] not been in temporary custody of a public agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the [children] were previously in the temporary custody of an equivalent agency in another state, and the [children] cannot be placed with either of [their] parents within a reasonable time or should not be placed with [their] parents.

The court also found that one or more of the factors in R.C. 2151.414(E) exist. The court further found that the services provided to Mother were unsuccessful largely because Mother did not complete the services. With respect to domestic violence services, the court found that although Mother completed domestic violence classes in July 2018, she has an ongoing relationship with a domestically violent partner who has failed to engage at all in case-plan services, including his own domestic violence and substance abuse services.

{¶ 22} With respect to housing and basic needs, the court found that Mother was evicted in June 2018 and that she had no contact with the agency from November 2018 to May 2019 in order to verify her housing or assess its appropriateness. The court found that Mother has not completed services in order

to eliminate the safety concerns that were present at the time of removal. Finally, the court found that a grant of permanent custody was in the children's best interest.

{¶ 23} Mother appealed, presenting two assignments of error for our review.

**Law and Analysis**

{¶ 24} In Mother's first assignment of error, she argues that the trial court's award of permanent custody was against the manifest weight of the evidence. In her second assignment of error, she argues that she received ineffective assistance of counsel.

{¶ 25} When adjudicating a motion for permanent custody, juvenile courts apply a two-prong test pursuant to R.C. 2151.414(B)(1). First, the court must find one of the following: (a) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two-month period. R.C. 2151.414. Second, the court must determine that it is in the best interest of the child to grant permanent custody to the agency. These findings must be supported by clear and convincing evidence. The Ohio Supreme Court defines clear and convincing evidence as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be

established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 26} It is well-recognized that a parent has a "fundamental liberty interest" in the care, custody, and management of his child and an "essential and basic civil right" to raise his or her children. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990). A parent's liberty interest, however, is tempered by the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 27} Here, the court satisfied the first prong of the statutory test by finding that the children cannot be placed with a parent within a reasonable time or should not be placed with a parent. To determine whether a child cannot or should not be placed with a parent within a reasonable time, courts consider the factors identified in R.C. 2151.414(E). A trial court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent. *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42.

{¶ 28} The court found, pursuant to R.C. 2151.414(E)(1),

[f]ollowing the placement of the [children] outside [their] home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the [children] to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside [their] home.

**{¶ 29}** The court also found, pursuant to R.C. 2151.414(E)(4), that Mother "has demonstrated a lack of commitment toward the [children] by failing to regularly support, visit, or communicate with the [children] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the [children.]"

**{¶ 30}** Finally, the court found, pursuant to R.C. 2151.414(E)(10) that Mother has abandoned the children by not having any visitation with the children since November 2018. After a thorough review of the record, we conclude that these findings were supported by clear and convincing evidence. With respect to R.C. 2151.414(E)(1), there was evidence presented at trial that despite reasonable efforts by the agency, Mother has failed continuously and repeatedly to remedy the conditions that led to the children's removal. Although Mother completed domestic violence classes, the record reflects that Mother failed to benefit from those classes. Specifically, the record reflects that Mother consistently failed to show an appreciation or understanding of the role that domestic violence played in the removal of her children from her home; Mother initially denied that domestic violence was an issue in her family. The record also reflects that Mother continued her relationship with her abusive boyfriend after completing domestic violence classes. Further, the boyfriend failed to engage in any case-plan services. This finding is supported by clear and convincing evidence.

**{¶ 31}** With respect to R.C. 2151.414(E)(4) and 2151.414(E)(10), Mother argues that it is inappropriate for the trial court to have based its lack of commitment

or abandonment findings on her lack of visitation with the children when the county terminated visitation. We disagree. The record reflects that Mother's participation in visits with the children was inconsistent. While visitation initially took place weekly, it was changed to take place on a biweekly basis based on Mother's failure to show up for scheduled visits. Mother continued to fail to show up to visits. Further, Mother made no effort to restore visitation once it was terminated, and from November 2018 to May 2019, Mother failed to communicate her whereabouts to the agency, resulting in an inability of the agency to contact her or communicate with her. With respect to an abandonment finding, R.C. 2151.011(C) states that "[f]or the purposes of this chapter, a child shall be presumed abandoned when the parent of the child has failed to visit or maintain contact with the child for more than 90 days, regardless of whether the parents resume contact with the child after that period of 90 days." Here, Mother had no contact with her children, except to the extent that she was concealing Ca.T. and J.B. from the agency, for a period of several months. The R.C. 2151.414(E)(4) and (E)(10) findings are supported by clear and convincing evidence.

{¶ 32} In addition to this statutory determination, the trial court made a best interest determination pursuant to R.C. 2151.414(D). A thorough review of the record in this case shows that competent, credible evidence supports the trial court's determination that permanent custody is in the children's best interest.

{¶ 33} To determine whether a grant of permanent custody is in a child's best interest, the juvenile court must consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public service children agencies or private child placing agencies for [12] or more months of a consecutive [22]-month period;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in [R.C. 2151.414](E)(7) to (11) apply in relation to the parents and child.

R.C. 2151.414(D)(1). "The juvenile court only needs to find one of the above factors in favor of permanent custody to terminate parental rights." *In re Da.B.*, 8th Dist. Cuyahoga No. 105886, 2018-Ohio-689, ¶ 35, citing *In re J.S.*, 8th Dist. Cuyahoga Nos. 101991 and 101992, 2015-Ohio-2701, ¶ 51, citing *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827.

{¶ 34} In this case, the court considered the statutory factors. With respect to R.C. 2151.414(D)(1)(a), the trial court considered the interaction and interrelationship of each of the children with their respective parents, relatives, and foster caregivers. Specifically, the court considered the children's relationship with Mother. The record reflects that the children generally enjoyed their visits with Mother, and some of the children wanted to return to Mother's custody. The record

also reflects that visitation was traumatic for the children, especially to the extent that Mother frequently failed to show up for visits.

{¶ 35} With respect to R.C. 2151.414(D)(1)(b), the trial court considered the wishes of the children as expressed through the GAL reports and their attorney's statements. With respect to R.C. 2151.414(D)(1)(c), the trial court considered the children's custodial history. Specifically, the court considered that the children were in agency custody for approximately two years from 2014 to 2016 prior to their removal in this case, and that, at the time of the trial in this case, the children had been in agency custody for approximately 21 months.

{¶ 36} Finally, with respect to R.C. 2151.414(D)(1)(d), the court considered the children's need for a legally secure placement and whether such placement could be achieved without a grant of permanent custody. The court made the findings described above related to its determination that the children cannot be returned to Mother within a reasonable time or should not be returned to Mother. In addition, the record reflects that the court considered evidence regarding other areas of the case plan, including housing and basic needs, that arose after the agency filed its motion for permanent custody. Specifically, the court considered that Mother was intermittently homeless, and at the time of trial, the agency had been unable to verify whether Mother had a home, let alone whether it was appropriate for five children. We are mindful that Mother has undoubtedly made significant progress on her case plan. We are also mindful that the children clearly have a strong bond with their mother, particularly in light of the fact that two of them went AWOL apparently in

an attempt to reunite with her. However, several factors, most of which are precipitated or enhanced by her failure to engage in case-plan services, support the trial court's best interest determination. Therefore, we find that clear and convincing evidence supported the trial court's determination. Mother's first assignment of error is overruled.

{¶ 37} In her second assignment of error, Mother argues that she received ineffective assistance of counsel for failing to make a closing argument, failing to object to the introduction of Mother's convictions for interfering with custody, and failing to object to the agency calling a supervisor as a witness rather than the social worker who had been more directly involved with the family.

{¶ 38} The standard for an ineffective assistance of counsel claim in permanent custody proceedings is the same standard that applies in criminal cases. *In re Nicholson*, 8th Dist. Cuyahoga Nos. 75533, 75534, 75535, 75536, 75537, 75538, and 75539, 2000 Ohio App. LEXIS 223, 8 (Jan. 27, 2000), citing *In re Brodbeck*, 97 Ohio App.3d 652, 657, 647 N.E.2d 240 (3d Dist. 1994). To establish ineffective assistance of counsel, a party must demonstrate that counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 687-688.

{¶ 39} With respect to the decision to waive closing argument, this court has held that such a decision may be a valid trial strategy. *State v. Ross*, 8th Dist. Cuyahoga No. 92289, 2009-Ohio-5366, ¶ 27. In this case, Mother argues that waiving closing arguments was deficient because her counsel should have argued that the children had not been in agency custody for 12 months out of a 22-month period. This argument is irrelevant. Despite Mother's arguments, the court did not make this statutory finding. Therefore, any argument by counsel regarding this finding would have been inconsequential. Mother also argues that counsel should have argued that the court was improperly considering a ground for removal that did not exist at the time the motion was filed — specifically, that Mother had been convicted of interfering with custody. This argument is also without merit. The court is empowered by the statute to consider a wide variety of factors in determining whether to grant a motion for permanent custody. For example, R.C. 2151.414(E)(16) authorizes a trial court to consider "[a]ny other factor the court considers relevant" in determining whether a child cannot or should not be placed with a parent within a reasonable time. Further, in making a best interest determination, R.C. 2151.414(D)(1) specifically mandates that the court consider "all relevant factors, including, but not limited to" those enumerated in the statute.

{¶ 40} With respect to counsel's decision not to object to the agency calling a supervisor as a witness rather than the social worker involved in the case, we do not find the lack of objection deficient. Although the social worker indeed had more direct involvement with the family, the supervisor was familiar with all aspects of

the case and was able to provide sufficient and relevant testimony. The supervisor had knowledge about the family, Mother's case plan goals and compliance, and the service providers with whom Mother was working. Therefore, Mother's counsel was not deficient for waiving closing argument or failing to object to a witness. Moreover, we are not persuaded by Mother's argument that her counsel's conduct was prejudicial.

{¶ 41} Because Mother has not satisfied either prong of the *Strickland* test, we find that she was not provided ineffective assistance of counsel. Mother's second assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover of appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR