[Cite as *In re B.H.*, 2018-Ohio-1238.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re B.H, P.H.

Court of Appeals Nos.  L-17-1126
L-17-1127

Trial Court No.  16254788
14243780

**DECISION AND JUDGMENT**

Decided:  March 30, 2018

* * * * *

Stephen D. Long, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} In this consolidated appeal, appellant-mother, L.D., appeals the judgments of the Lucas County Court of Common Pleas, Juvenile Division, awarding legal custody of her minor children, P.H. and B.H., to the paternal grandmother, T.T.  For the reasons that follow, we affirm.

# I. Filing of *Anders* Briefs in Cases Involving the Termination of Parental Rights or the Dispositional Award of Legal Custody Following a Finding of Abuse, Dependency, or Neglect

{¶ 2} At the outset, we note that appointed counsel for mother has filed a brief and requested leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Previously, in *In re K.D.*, 6th Dist. Sandusky No. S-16-008, 2017-Ohio-136, ¶ 4, we directed that for all future appeals from a neglect and dependency dispositional order granting legal custody of a child to a nonparent, a merit brief must be filed in compliance with App.R. 16; *Anders* briefs would not be accepted. We follow that decision today.

{¶ 3} Furthermore, we take this opportunity to expand our prohibition of *Anders* briefs to cases involving the termination of parental rights. While we have accepted *Anders* briefs in past permanent-custody cases, we find that this change is both consistent with our local rule, which provides for the filing of "No-Error Briefs" only in criminal appeals, *see* 6th Dist.Loc.App.R. 10(G), and is in the best interests of justice. In so doing, we join in the First District's reasoning in *In re J.M.*, 1st Dist. Hamilton No. C-130643, 2013-Ohio-5896, ¶ 11-18, a portion of which follows:

> Our holding is in no way meant to discount the magnitude of the parental rights at stake in a permanent-custody case. Indeed, we recognize that permanent-custody proceedings implicate a parent's fundamental due-process rights and, as such, parents must be afforded substantial procedural protections. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d

2.

485, ¶ 14. We find, however, that a parent's rights would be better protected where counsel is compelled to search the record and present arguments for review.

The records in termination proceedings are typically extensive and highly fact-based. *Anders* review in a permanent-custody case places an inordinate burden on the appellate court to scour the voluminous record searching for error, a task that we are "ill-equipped" to perform without the "active and meaningful assistance of counsel." *State v. Tsibouris*, 1st Dist. Hamilton Nos. C-120414 and C-120415, 2013-Ohio-3324. It is far more beneficial to the court and to the client for appellate counsel, who has necessarily reviewed the record in full, to brief the merits of the case and set forth arguments for the court's consideration.

We are confident in the ability of attorneys to craft nonfrivolous arguments in permanent-custody appeals. Custody determinations are necessarily fact-specific and, as such, they are almost never entirely one-sided. It is, therefore, difficult to imagine any appeal challenging the weight of the evidence or a best-interest determination that would be deemed frivolous. *Id.* at ¶ 15-17.

{¶ 4} We find that the reasoning in *In re J.M.* is as applicable to legal custody determinations following a finding of abuse, dependency, or neglect, as it is to an award of permanent custody to a children's services agency. Therefore, this court will no longer accept *Anders* briefs in legal custody or permanent custody cases.

3.

**{¶ 5}** Accordingly, we hereby deny counsel's motion to withdraw. Nonetheless, because of the need for swift resolution of child custody matters and the unique circumstances in this case, we will consider the potential issue raised in counsel's brief, as well as the issue raised by mother in her pro se brief, and review the record for plain error.

## II. Facts and Procedural Background

**{¶ 6}** Lucas County Children Services ("LCCS") became involved with mother in October 2014, upon concerns of mother's substance abuse and domestic violence between her and M.H., the father of P.H. and B.H. On December 22, 2014, P.H. was adjudged to be a dependent and neglected child.[1] B.H. was not yet born at that time. LCCS was granted protective supervision of P.H., and case plan services were developed for mother to do an assessment for mental health and substance abuse issues, and to receive domestic violence services.[2]

**{¶ 7}** While the children were under LCCS' protective supervision, it became increasingly difficult for the caseworker to see the children monthly. The caseworker testified that sometimes the children would be at the home, but mother would not be present. Other times, no one would be at the home for the scheduled visit. Finally, the

---

[1] Three of P.H.'s older siblings were also adjudged dependent and neglected. Those siblings have a different father than M.H., and are not the subject of this appeal.

[2] A case plan was also developed for M.H., which he did not complete. M.H. is not a party to this appeal.

4.

caseworker testified that one time she approached the house and one of the children opened the door to get the mail, saw the caseworker, and shut the door and would not answer it. In addition, the agency was receiving reports that mother was not staying in the home during the week and would be gone for several nights at a time, and attempts to contact mother were unsuccessful because mother would not answer her phone and her voice mailbox was full.

{¶ 8} As a result of this difficulty, and mother's continued positive tests for controlled substances, LCCS moved for temporary custody of the children. On October 27, 2015, LCCS was awarded interim temporary custody of the children, however the agency was unable to locate the children. Approximately one week later, the children were found with mother in a hotel in Michigan. P.H. was placed with his paternal grandmother, T.T. On January 28, 2016, a dispositional hearing was held, at which temporary custody of P.H. was awarded to LCCS.

{¶ 9} Prior to the children being removed, mother was engaged in substance abuse and domestic violence services through Lutheran Social Services. Although engaged in the services, mother continued to test positive for controlled opiates, and was unable to provide a current prescription. Further, the prescription that mother did provide was blacked out so that it was difficult to determine where the prescription originated. In addition, mother became re-involved with M.H., and the police were called on one occasion for domestic violence where mother was hit in the leg with a tree branch.

5.

However, mother testified that the incident for which the police were called was actually a dispute between her brother and M.H., and that she was inadvertently hit in the leg with the tree branch.

{¶ 10} After the children were removed, mother did not reengage with services until a week before B.H. was born in March 2016. At the time of his birth, B.H. and mother tested positive for cocaine. B.H., who was born in Michigan, was removed from mother and interim temporary custody was awarded to LCCS. B.H. was placed with his paternal grandmother, T.T.

{¶ 11} On September 20, 2016, an adjudicatory hearing was held, and B.H. was found to be dependent, neglected, and abused. The dispositional hearing for B.H. was scheduled for December 16, 2016.

{¶ 12} The next day, on September 21, 2016, the trial court held a hearing on LCCS' motion to transfer legal custody of P.H. to T.T. At the hearing, the caseworker testified that mother was referred for an assessment at Renewed Minds in July 2016. At the assessment, mother was asked to complete a drug screen. However, mother did not complete the drug screen and instead left the building. Mother reported that she started services with Renewed Minds in August 2016. The caseworker also testified that communication with mother has been very difficult and that they would schedule meetings and mother would not come to them. In addition, mother has made numerous attempts to have the caseworker removed from the case. The caseworker testified that, in her opinion, mother has not exhibited any change since the beginning of the case; namely

6.

that she is still in constant contact with M.H. despite the domestic violence concerns, she starts services late and does not follow through with them, and she tries to circumvent the process.

{¶ 13} The caseworker also testified that P.H. is doing very well in T.T.'s care. He is bonded with T.T., goes to her for anything he needs, and seems very happy. He also is attending kindergarten and is doing well in school. The caseworker recommended legal custody of P.H. to T.T., with mother and M.H. to have weekly supervised visits.

{¶ 14} Mother testified next at the hearing. Mother testified that she had concerns with T.T. being granted legal custody because she does not have a good relationship with T.T. She also testified that she was concerned because while B.H. was in T.T.'s care, the child's car seat was filthy and the child had some buildup around his neck that looked like it had not been cleaned in weeks. Mother then described how she has difficulty communicating with the caseworker, and that the caseworker will not return her calls, so mother has had to contact the caseworker's supervisors to make any progress.

{¶ 15} Regarding her compliance with the recommended services, mother testified that she was doing domestic violence and drug abuse services through Lutheran Social Services. She is now doing her drug services through Renewed Mind at the request of LCCS. Mother explained that when she left Renewed Mind without completing the drug screen, she was frustrated because she had been there for a couple of hours and had just learned that she would not be able to do both the drug services and the domestic violence services there, despite being told that she could by the caseworker. Mother testified that

7.

she is now doing well in the services and has not been using any controlled substances. Mother anticipates that she will complete her services within the next three months. Mother testified that she is asking the court for a 90-day extension to complete her services.

{¶ 16} Following the cross-examination of mother, the hearing was continued to December 16, 2016. At the continued hearing, mother was recalled to testify regarding her pending motion for the maternal grandmother, S.D., to be awarded legal custody. Mother testified that S.D. is well-bonded with the children, and she has always been there as mother's support, such as taking the children to medical appointments or bringing them food. Mother also explained that there is poor communication with T.T., and that T.T. does not facilitate a relationship between P.H. and B.H. and mother's other children.

{¶ 17} On cross-examination of mother, it was revealed that mother tested positive for cocaine four times in the months of October and November 2016. Mother admitted that S.D. did not know that she had tested positive.

{¶ 18} Finally, the guardian ad litem gave her opinion that it was in the best interest of P.H. to be placed with T.T. The trial court agreed and ordered that legal custody of P.H. be granted to T.T., with the parents to have three hours weekly of supervised visitation.

{¶ 19} Immediately after the continued hearing for P.H., the trial court conducted a dispositional hearing for B.H. Much of the testimony echoed what was previously said in P.H.'s hearing, including that mother has been engaged in services off and on for

8.

almost two years, yet continues to use controlled substances, even testing positive for cocaine four times in the past two months. Further, the caseworker and mother testified that there was difficulty in communication, with the caseworker stating that mother would not answer her phone or her voicemail would be full or not set up, and mother testifying that no one from the agency ever returned her calls despite her having several working numbers. The caseworker also testified that B.H. is doing well in his placement with T.T., and that the child is bonded to T.T. The caseworker expressed no concerns about the ability of B.H. to interact with and develop a relationship with his brothers and sisters, noting that T.T. would support visitations between the siblings.

{¶ 20} The last person to testify at B.H.'s dispositional hearing was S.D. S.D. testified that she is well-bonded with B.H. She explained that her plan would be to move into mother's house to raise the children, and mother would move into S.D.'s house until mother completed her domestic violence and substance abuse services. S.D. testified that she has been married to her husband for 30 years, that he is retired from General Motors, that their house is paid for, and that they are in good standing. Finally, she testified that she would comply with any court orders to allow mother or M.H. to visit the children.

{¶ 21} On cross-examination, S.D. testified that she does not trust LCCS, and that she would need everything in writing before she would comply with any requests. She also testified that she believes mother is a good mother, and she does not have any concerns with the children being in mother's care even while mother was using cocaine.

9.

{¶ 22} As the last part of the hearing, the guardian ad litem recommended that legal custody of B.H. be awarded to T.T. Thereafter, the trial court awarded legal custody of B.H. to T.T., with the parents to have three hours of weekly supervised visitation.

{¶ 23} Following the hearings, the magistrate issued findings of fact and conclusions of law in each case, in which he found that mother has not completed her case plan services and has not shown any willingness or desire to address the issues that caused the children to be removed. The magistrate also found that mother has tested positive for controlled substances on several occasions, and has recently tested positive for cocaine. Further, the magistrate found that mother has demonstrated a total disregard for court orders throughout the life of the case, having been found to be in contempt twice. Finally, the magistrate found that both children were doing well in their placement with T.T., and that such placement is in the best interest of the children.

{¶ 24} Mother filed objections to the magistrate's decision, arguing that LCCS has not made reasonable efforts to reunify the children in that the caseworker has not given the appropriate attention to mother. In addition, mother argued that she is making progress towards completion of her case plan services, having completed substance abuse, domestic violence, and mental health services through Lutheran Social Services. Finally, mother argued that placement of the children with T.T. was not in their best interest, and that they should have been placed with S.D., who would have provided a closer familial bond.

10.

**{¶ 25}** On April 18, 2017, the trial court entered its judgments overruling mother's objections in both cases. Mother has timely appealed from the April 18, 2017 judgments.

### III. Assignments of Error

**{¶ 26}** In his *Anders* brief, counsel has assigned the following potential error for our review:

I. The trial court abused its discretion in overruling mother's objections to magistrate's decisions in JC 14243780 and JC 16254788 awarding legal custody of PH and BH, respectively, to their paternal grandmother.

**{¶ 27}** Mother has also filed a pro se brief, proposing as an assignment of error:

Potential assignment of error within the trial Court abusive, bias behavior destroying a Mother family irrespectively without reason and fairness to mother wishes [sic].

### IV. Analysis

**{¶ 28}** We review a trial court's judgment adopting a magistrate's decision to award legal custody of a minor child to a relative or other interested person for an abuse of discretion. *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19. An abuse of discretion suggests that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 29}** "Where a child has been adjudicated dependent, a trial court may award legal custody to a nonparent where it finds, by a preponderance of the evidence, that legal

11.

custody is in the child's best interests." *In re A.D.*, 6th Dist. Erie Nos. E-16-059, E-16-060, E-16-061, 2017-Ohio-6913, ¶ 31. "In making such a determination, 'courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the [child]." *Id.* at ¶ 32, quoting *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

{¶ 30} Here, we find that the trial court's decision was supported by the evidence. The testimony revealed that at the time of the hearing, mother continued to suffer from a substance abuse problem that caused B.H. to be born positive for cocaine, and caused mother to test positive numerous times throughout the case. Moreover, mother has demonstrated a pattern of not complying with orders of the court, of not maintaining contact with LCCS, and of attempting to circumvent LCCS by taking the children to Michigan.

{¶ 31} Further, the testimony supports the trial court's conclusion that an award of legal custody of the children to T.T. is in the children's best interest as they are well-bonded to her, their needs are being met, and they are thriving in her care. Notably, mother alleges in her pro se brief that T.T.'s son, M.H., is a drug dealer, convicted felon, and marijuana smoker. However, the record does not indicate that M.H., once he is released from prison, will have contact with the children beyond the court-ordered supervised visitation. Therefore, we hold that the trial court's decision is not an abuse of discretion.

12.

**{¶ 32}** Accordingly, counsel's proposed assignment of error and mother's pro se assignment of error are not well-taken.

**{¶ 33}** In addition, we have conducted an independent review of the record, and have found no plain errors that would justify a reversal of the judgments.

### V. Conclusion

**{¶ 34}** For the foregoing reasons, the judgments of the Lucas County Court of Common Pleas, Juvenile Division are affirmed. Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

**{¶ 35}** The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J. _____

_____
                                    JUDGE

Arlene Singer, J. _____

James D. Jensen, J. _____                  _____
CONCUR.                                    JUDGE

_____
                                    JUDGE