[Cite as *In re T.T.*, 2024-Ohio-2914.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE T.T.                                          :

                                                         No. 113548
A Minor Child                                  :

[Appeal by J.T., Father]                   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD21907503

---

***Appearances:***

David S. Bartos, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Kristin Davis, Assistant Prosecuting
Attorney, *for appellee* Cuyahoga County Division of
Children and Family Services.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant, J.T. ("Father"), appeals the juvenile court's decision awarding permanent custody of his child, T.T. ("T.T." or "the child"), to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") and terminating his parental rights. After a careful review of the record, we affirm the juvenile court's decision.

{¶ 2} T.T. was born in August 2021 and was removed from Mother's home on August 27, 2021. On August 31, 2021, CCDCFS filed a complaint alleging T.T. to be abused and neglected and seeking temporary custody of T.T. to the agency. In the course of the proceedings, the child was committed to the predispositional temporary custody of CCDCFS, was adjudicated to be abused and neglected, and was then committed to the temporary custody of CCDCFS. The child was placed with the paternal grandmother. On July 11, 2022, CCDCFS filed a motion to modify temporary custody to permanent custody to CCDCFS. After several continuances and further proceedings in the matter, the case proceeded to trial. Testimony and evidence were presented in the matter. On December 8, 2023, the juvenile court issued a decision in which it granted CCDCFS's motion, committed the child to the permanent custody of the agency, and terminated the parental rights of Mother and Father.

{¶ 3} Father timely appealed. He raises three assignments of error for our review.

{¶ 4} Under his first assignment of error, Father claims the juvenile court erred by failing to appoint him counsel pursuant to R.C. 2151.352 and Juv.R. 4(A) for the first day of trial and requiring him to proceed pro se.

{¶ 5} R.C. 2151.352 provides, in relevant part, that a parent of a child "is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code" and, if indigent, the right to appointed counsel. R.C. 2151.352 also requires that "[i]f a party appears without counsel, the

court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person."

{¶ 6} Juv.R. 4(A) similarly states, in relevant part, that "[e]very party shall have the right to be represented by counsel and every . . . parent . . . the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding."

{¶ 7} The Supreme Court of Ohio has recognized that "a parent has the right to counsel at a permanent-custody hearing, including the right to appointed counsel if the parent is indigent." *In re R.K.*, 2018-Ohio-23, ¶ 5, citing R.C. 2151.352; Juv.R. 4(A). "Of course, the right to counsel can be waived." *Id.* at ¶ 5.

{¶ 8} In *R.K.*, the juvenile court granted an attorney's oral motion to withdraw at a permanent-custody hearing at which the parent did not appear and then the court proceeded with the hearing without making any inquiry and without giving any consideration to whether the parent had waived the right to counsel. *Id.* at ¶ 2, 8. The Supreme Court held that "when the state seeks to terminate a parent's parental rights, the parent has the right to counsel. The parent cannot be deprived of that right unless the court finds that the parent has knowingly waived the right to counsel." *Id.* at ¶ 9. The circumstances of *In re R.K.* are not what occurred in this matter.

{¶ 9} Here, the record demonstrates that Father initially was represented by counsel through the public defender's office and he later retained private counsel, who filed a notice of appearance. At the adjudicatory hearing on the complaint, and

when he was arraigned on the motion to modify temporary custody to permanent custody, counsel for Father was present and the court explained legal rights to Father. On June 13, 2023, the trial court granted the oral motion to withdraw of Father's retained counsel. The oral motion was made due to conflict and was followed by a written motion that referenced the Code of Professional Responsibility and indicated the reason for the request to withdraw was because counsel and Father did not agree as to the best way to proceed forward with Father's case. The juvenile court granted Father's motion for a continuance to retain new counsel, set a trial date a month and a half later, and indicated that "[s]hould [Father] not retain counsel he should be ready, willing and able to proceed on his own." Father did not file an affidavit of indigency or request the appointment of counsel. On the first day of trial, the juvenile court personally addressed Father, who confirmed that he was not able to retain an attorney and that he would be proceeding pro se.

{¶ 10} It is recognized that "[c]ourts may infer a parent waived the right to counsel by considering the totality of the circumstances, including the background, experience, and conduct of the parent, or if the parent expressly waived the right to counsel." *In re M.M.*, 2022-Ohio-579, ¶ 13 (11th Dist.), citing *In re W.W.E.*, 2016-Ohio-4552, ¶ 39 (10th Dist.). From the totality of circumstances herein, it can be inferred that the juvenile court ascertained Father knowingly and voluntarily waived

his right to counsel when he indicated that he wished to proceed pro se. These circumstances are not akin to the circumstances of the cases cited by Father.[1]

{¶ 11} Additionally, the record shows that after CCDCFS put on its case in chief on the first day of trial, a second day of trial was scheduled that was to include Mother's case in chief, Father's case in chief, and the recommendation of the child's guardian ad litem. Father filed a motion for appointment of counsel, and the juvenile court granted a continuance for the appointment of counsel. After Father was appointed counsel, Father's counsel did not make any argument to restart trial, object to the admission of any evidence presented on the first day of trial, or raise any challenge in allowing Father to proceed pro se on the first day of trial. Ordinarily, an appellate court in such situations would review only for plain error. *See id.* Plain error in civil cases is "sharply limited to the *extremely rare* case involving exceptional circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." (Emphasis in original.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997).

{¶ 12} The record in this case shows that Father's appointed counsel was afforded the opportunity to review the transcript of the first day of trial and to

---

[1] This was not the situation presented in *In re M.L.R.*, 2002-Ohio-5958 (8th Dist.), which is cited by Father. Among other distinguishing circumstances in that case, the appellant's attorney was allowed to withdraw the morning of the dispositional hearing in appellant's absence, no continuance was granted, the appellant was required to proceed immediately without representation, and the appellant never waived the right to counsel. *Id.* at ¶ 21-22.

prepare for the case. Also, the juvenile court granted the agency's motion to reopen its case in chief. On the second day of trial, Father's counsel was able to cross-examine two different agency witnesses, one of whom testified the first day of trial. Another agency worker who testified the first day of trial and the paternal grandmother were also present. Father was afforded the opportunity to present his case through counsel. We conclude this case does not involve exceptional circumstances that would justify reversal under the plain-error doctrine. We also do not find any prejudicial error occurred. Accordingly, the first assignment of error is overruled.

{¶ 13} Under his second assignment of error, Father claims the juvenile court's decision to grant permanent custody to CCDCFS is erroneous because CCDCFS had temporary custody of the child for less than 12 months when it filed its motion to modify temporary custody to permanent custody. Father maintains that the juvenile court lacked authority to proceed on the motion. We do not agree.

{¶ 14} There is no dispute that the juvenile court erroneously found that pursuant to R.C. 2151.414(B)(1)(d) "[t]he child has been in the temporary custody of [a] public children services [agency] . . . for twelve or more months of a consecutive twenty-two-month period." However, the error was harmless at best. *See In re R.D.W.*, 2021-Ohio-4304, ¶ 25-26 (8th Dist.).

{¶ 15} The agency did not rely on R.C. 2151.414(B)(1)(d) in filing its motion. Rather, in its motion to modify temporary custody to permanent custody to CCDCFS, the agency asserted that "the condition listed in R.C. 2151.414(B)(1)(a)

exists and that one or more of the factors listed in R.C. 2151.414(E) apply to the parents of the [child] at issue." The condition set forth in R.C. 2151.414(B)(1)(a) requires that

> [t]he child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

"R.C. 2151.414(E) sets forth the elements necessary to satisfy a determination under R.C. 2151.414(B)(1)(a), that the child cannot or should not be placed with either parent within a reasonable time." *In re Schaefer*, 2006-Ohio-5513, ¶ 38. The juvenile court found this condition was satisfied.

{¶ 16} In its journal entry, the juvenile court found that the motion to modify temporary custody to permanent custody was filed on July 11, 2022, which the record demonstrates was before the child had been in the agency's temporary custody for 12 months. Consistent with the agency's reliance on R.C. 2151.414(B)(1)(a), the juvenile court found pursuant to R.C. 2151.414(E) that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," and the juvenile court found multiple factors under R.C. 2151.414(E) were met, including R.C. 2151.414(E)(1) and (E)(4). "A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent." *In re R.D.W.* at ¶ 27, citing *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.). As later discussed, the

trial court's determination under R.C. 2151.414(B)(1)(a) was supported by the record in this case.[2]

{¶ 17} Moreover, the juvenile court had the authority to commit the child to the permanent custody of CCDCFS. *See* R.C. 2151.353(A)(4); R.C. 2151.414(B) through (E). Although the trial court made an erroneous finding, "that does not preclude us from finding that the trial court's judgment [awarding permanent custody to the agency] is nevertheless correct." *In re J.T.,* 2004-Ohio-5797, ¶ 36 (2d Dist.). The second assignment of error is overruled.

{¶ 18} Under the third assignment of error, Father claims the juvenile court's decision to grant permanent custody of the child to CCDCFS is against both the manifest weight of the evidence and the sufficiency of the evidence.

{¶ 19} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.,* 2023-Ohio-4703, ¶ 7. "Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

---

[2] The circumstances of this case are markedly different from *In re L.H.,* 2024-Ohio-2271 (8th Dist.), which is cited by Father.

(Cleaned up.)  *Id.*  In this case, the juvenile court made each of the statutory determinations and engaged in the requisite analysis.

{¶ 20} "[T]he proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties." *Id.* at ¶ 18.  Sufficiency of the evidence is a test of adequacy, while weight of the evidence depends on its effect in inducing belief.  *Id.* at ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When applying a sufficiency-of-the-evidence standard, a reviewing court should affirm the trial court when the evidence is legally sufficient to support the judgment as a matter of law.  *Id.* at ¶ 13, citing *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 3.  "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 21} As already discussed above, the juvenile court determined R.C. 2151.414(B)(1)(a) applies when it found that T.T., who was not yet 12 months old at the time the agency's motion was filed, "cannot be placed with one of the

child's parents within a reasonable time or should not be placed with either parent"

and set forth the following two findings as to Father under R.C. 2151.414(E):

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

{¶ 22} The juvenile court also considered all relevant best-interest factors, including the enumerated factors under R.C. 2151.413(D)(1)(a)-(e), which are specifically set forth in the court's decision, and determined "by clear and convincing evidence that it is in the best interest of the child to be placed in the Permanent Custody of CCDCFS." In determining whether a grant of permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) requires a juvenile court to "consider" all relevant factors, including the enumerated factors; however, the statute does not require a juvenile court to expressly discuss each of the best-interest factors. *In re A.M.*, 2020-Ohio-5102, ¶ 31. "[T]he best interests of the child are paramount in any custody case" and courts are to liberally interpret the statutes under R.C. Ch. 2151 "to provide for the care and protection of the child . . . ." *In re A.B.*, 2006-Ohio-4359, ¶ 32, citing R.C. 2151.01(A).

{¶ 23} The record herein demonstrates that the parties stipulated to the allegations of an amended complaint, which included allegations that Mother has

substance-abuse issues and had a domestically violent relationship with Father, that Mother needs to engage in services to address those issues, and that Mother needs to meet the basic needs of the child. CCDCFS also alleged that Father would benefit from substance-abuse services in order to appropriately care for the child. A case plan and amended case plans were filed, services were provided, and semiannual administrative reviews were conducted. Despite the agency's efforts, the parents' behaviors did not change and significant concerns remained.

{¶ 24} Testimony and evidence presented in the matter show that neither parent had demonstrated sobriety throughout the proceedings and there continued to be incidents involving conflict between them. Mother did not make significant progress on her case plan. Although Father completed intensive outpatient services, he did not participate in the recommended residential treatment. During the course of the case, he tested positive five times for alcohol and he did not comply with weekly drug-screening requests by the agency. A family advocate who was assigned to the case testified that Father does not believe he has an alcohol problem and, when she was speaking to Father about an issue, he was loud and belligerent. Father completed a program for domestic violence, but throughout the case, there were several alleged incidents of domestic violence to which the police were called. In relation to those incidents, Father argues that either there were no signs of violence, Mother was the aggressor, or there were no charges or arrests. However, there was a no-contact order in place between Mother and Father as well as evidence of an ongoing relationship between them. During the approximate two-month window

between the first and second days of trial, neither parent complied with weekly requests for drug screening and there was a domestic-violence incident that occurred at Father's apartment in which Mother was arrested and charged. It was reported that Mother was staying with Father at the time because she was homeless, despite the no-contact order being in place.

{¶ 25} The testimony elicited at trial also showed that Father had supervised visitation with the child that was switched from a community setting to the paternal grandmother's home and he has a good relationship with the child. However, Father failed to take advantage of added opportunities to be more involved in the child's life and he failed to provide financial assistance to the relative caregiver. The child had been in the care of the paternal grandmother since a few weeks old. The child is well cared for and is very bonded with his caregiver. Other testimony and evidence were presented in the matter that this court has thoroughly reviewed.

{¶ 26} The record demonstrates that Father has not fully satisfied the objectives of his case plan and has not shown that he can provide a safe, stable, and sober environment for T.T. The ongoing worker assigned to the matter testified to her belief that permanent custody to the agency was in the child's best interest. The guardian ad litem also recommended permanent custody to the agency.

{¶ 27} Upon our review, we find there is clear and convincing evidence in the record to support the juvenile court's determinations and the evidence was legally sufficient to support the trial court's decision as a matter of law. We also do not find the juvenile court's decision to grant permanent custody to CCDCFS to be against

the manifest weight of the evidence. While Father points to evidence favorable to him and argues certain allegations were not proven by CCDCFS, the juvenile court was permitted to consider all material and relevant evidence in rendering its disposition. We are not persuaded by any of Father's other arguments.

**{¶ 28}** After carefully reviewing the entire record, we overrule Father's assignments of error and affirm the juvenile court's judgment granting permanent custody of the child to CCDCFS.

**{¶ 29}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR