[Cite as *In re D.H.*, 2025-Ohio-748.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE D.H. | : | |
| | | No. 114164 |
| A Minor Child | : | |
| [Appeal by Mother, L.M.] | : | |
| | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** March 6, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Court Division
Case No. AD23908201

---

### *Appearances:*

David S. Bartos, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} L.M., mother ("Mother") of the subject minor child, D.H., filed this appeal after the juvenile court granted the motion of the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") to modify temporary custody of D.H. to permanent custody. After a careful review of the record, we dismiss the appeal.

{¶ 2} Counsel appointed to represent Mother in this appeal has filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and requested leave to withdraw as counsel. In *Anders*, the Court held that where, after a conscientious examination of the case, appellate counsel is unable to find any meritorious issues for review, counsel may inform the court and request permission to withdraw from the case. *Id.* at 744. The request must be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished to the indigent defendant and time allowed for him or her to raise any points that he or she chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds, it may grant counsel's request to withdraw and dismiss the appeal. *Id.* If this court determines that one or more legal points have merit, the defendant will be afforded counsel to argue the appeal. *Id.*

{¶ 3} In his brief on appeal, Mother's counsel stated that he had carefully reviewed the trial record, examined the relevant case and statutory law, and determined that the trial court did not commit any errors that prejudiced Mother. This court gave Mother the opportunity to file a pro se brief, but she did not do so.

{¶ 4} We have reviewed the record, which demonstrates that in the summer of 2022, Mother gave birth to D.H. in Pennsylvania; she subsequently moved to Cleveland to be in a relationship with a man she met online.[1] While in that

---

[1] Mother had four other children who had been the subject of child-welfare agency involvement in Pennsylvania, resulting in Mother's ability to parent them being limited

relationship, Mother was a victim of domestic violence. She had also been a victim of domestic violence in at least two other relationships.

{¶ 5} In July 2023, when D.H. was 13 months old, CCDCFS became involved with Mother after she took the child to the hospital because she believed he had been sexually assaulted. The sexual assault allegation was unsubstantiated, but the hospital staff noted the child's "failure to thrive"; the child was underweight and malnourished. The agency was granted emergency custody of D.H. In August 2023, the agency was granted temporary custody of the child and a case plan, with the goal of reunification, was developed for Mother.

{¶ 6} The record demonstrates that Mother had issues with substance abuse and D.H. tested positive for cocaine at birth. Further, Mother was diagnosed as bipolar and having depression, anxiety, attention-deficit/hyperactivity disorder, and post-traumatic stress disorder. Mother also lacked stable housing — she would sleep on couches at friends' homes. Thus, Mother's case plan consisted of services for her to address domestic violence, mental health, substance abuse, basic needs, parenting, and paternity. Paternity was established, but Mother did not complete the other case-plan goals. CCDCFS therefore filed a motion to modify temporary custody to permanent custody, and a trial was held in June 2024. Mother did not appear for trial, and her counsel requested a continuance, which the juvenile court denied.

---

in some capacity; her parental rights were terminated for one child and legal custody was granted to a relative for three children.

{¶ 7} The child's Father participated in the trial telephonically. Father was incarcerated in Pennsylvania and would be so until 2028. Father informed the trial court that he agreed with CCDCFS's motion for permanent custody.

{¶ 8} The agency's caseworker testified that when she first became involved with Mother in the summer of 2023, Mother was involved with a provider called Transcend, which had the capacity to provide several services to address the goals of the case plan. However, in November 2023, Mother left Ohio to return to Pennsylvania and her services with Transcend were terminated. Mother reported that she had completed a parenting program at Transcend. The case worker requested Mother to provide certification of completion, but Mother never did.

{¶ 9} Mother returned to Ohio in December 2023 but stated that she did not want to resume services with Transcend. The case worker recommended Mother engage with a provider called Signature; Mother did not want to go to Signature, but did begin services with a provider called Hitchcock for substance abuse. She did not complete the program, however.

{¶ 10} Further, Mother did not engage in services for her mental health and did not complete services for domestic violence.[2] In addition to not having stable housing, Mother was also unemployed. Mother was inconsistent with her weekly visitation with D.H. From the end of March 2024 until the time of trial in June 2024, Mother had only visited the child twice. The case worker testified that when

_____

[2] From July 2023 through November 2023, Mother was living in a trauma center, where she was receiving some help with domestic violence issues, but did not complete the services and did not reengage when she returned to Cleveland from Pennsylvania.

Mother did visit with the child, she did not demonstrate the ability to provide for the child's basic needs. Further, according to the case worker, communicating with Mother was difficult; the case worker had nine different phone numbers for Mother.

{¶ 11} D.H.'s foster mother, with whom he had been placed since being removed from Mother in the summer of 2023, testified at trial. The foster mother described D.H. as thriving. The child has some health issues and developmental delays, but they are all being treated and managed.

{¶ 12} The child had a guardian ad litem ("GAL") who recommended to the juvenile court that permanent custody be granted to CCDCFS. The GAL opined that neither Mother nor Father were in a position to care for D.H. within "the foreseeable future," that child was being "well taken care of," and the child's medical needs had "greatly improved because of the work of the foster parents."

{¶ 13} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, by clear and convincing evidence, that it is in the best interest of the child to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.*, 2023-Ohio-4703, ¶ 7. Further, because Mother has had her parental rights terminated in respect to one of D.H.'s siblings, Mother was required to demonstrate, by clear and convincing evidence, that "notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of [D.H.]." R.C. 2151.414(E)(11). "Clear and convincing evidence is that measure or degree of proof which is more

than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Cleaned up.) *Id.*

{¶ 14} Under R.C. 2151.414(B)(1)(a), the juvenile court found, by clear and convincing evidence, that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. The court also found that reasonable efforts were made and relevant services were provided in an attempt to effectuate reunification.

{¶ 15} Regarding the best interest of the child, the court found that returning the child to Mother would not be in the child's best interest. In considering the best interest factors under R.C. 2151.414(D)(1), the court made the following findings: (1) the child has a strong bond with his caregivers (R.C. 2151.414(D)(1)(a)); (2) the child is too young to express his wishes, but his GAL recommended granting the agency's motion for permanent custody (R.C. 2151.414(D)(1)(b)); and (3) "the child deserves a safe and stable home environment where his needs can be met and he can thrive. This cannot be achieved with either parent as Father is incarcerated and Mother has failed to remedy the cause for removal. CCDCFS has not identified any appropriate/willing family members." (R.C. 2151.414(D)(1)(d)).

{¶ 16} In considering subsection (e) of R.C. 2151.414(D)(1), which directs trial courts to consider whether any factors under R.C. 2151.414(E)(7) to (11) apply, the court found, by clear and convincing evidence, that the child cannot be placed

with one of the child's parents within a reasonable time or should not be placed with either parent, and cited the following factors relative to Mother in support of its conclusion:

> (1) following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home [R.C. 2151.414(E)(1)]; (2) the chronic mental illness, chronic emotional illness, intellectual disability, or chemical dependency of the parent is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year [R.C. 2151.414(E)(2)]; (3) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child [R.C. 2151.414(E)(4)]; (4) the parent is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect [R.C. 2151.414(E)(14)]; and (5) Father is in agreement with permanent custody. Mother was not present for trial. [R.C. 2151.414(E)(16)].

{¶ 17} A juvenile court's decision under R.C. 2151.414 to award permanent custody of a child to an agency and terminate parental rights can be reviewed under either sufficiency-of-the-evidence or manifest-weight-of-the-evidence standards. *See In re T.T.*, 2024-Ohio-2914, ¶ 20 (8th Dist.). We find there is clear and convincing evidence in the record to support the juvenile court's determinations and the evidence was legally sufficient to support the trial court's decision as a matter of law. We also do not find the juvenile court's decision to grant permanent custody to CCDCFS to be against the manifest weight of the evidence. Moreover, Mother failed

to present clear and convincing evidence that despite having had her parental rights terminated for a sibling of D.H., she would be able "to provide a legally secure permanent placement and adequate care for the health, welfare, and safety of [D.H.]," as required under R.C. 2151.414(E)(11).

{¶ 18} Finally, the juvenile court declined to extend temporary custody — which was set to expire in a little over a month after the trial — and grant a first extension. Under R.C. 2151.415(D) and Juv.R. 14, a juvenile court may extend a temporary custody order for a period of six months if it determines, by clear and convincing evidence, that the extension (1) is in the best interest of the child, (2) there has been significant progress on the case plan of the child, and (3) there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. *See In re T.W.*, 2017-Ohio-8268, ¶ 24 (12th Dist.). "'Notably the [extension] statute provides only that the juvenile court may extend the temporary custody order, not that it must do so.'" *Id.* at ¶ 25, quoting *In re H.G.*, 2015-Ohio-1764, ¶ 20 (12th Dist.). A juvenile court's decision to grant or deny a request for an extension of temporary custody is therefore reviewed under an abuse-of-discretion standard. *Id.* An abuse of discretion occurs if a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 19} The record demonstrates that Mother did not make any substantial progress toward reunification that would have warranted an extension. An

extension would not have been in the best interest of D.H., and there was no reasonable cause to believe reunification would have occurred within the period of an extension. Therefore, the juvenile court did not abuse its discretion in finding that an extension would have been appropriate.

{¶ 20} On this record, we agree with counsel that the appeal is wholly frivolous and without merit.

{¶ 21} The requirements set forth in *Anders* have been satisfied, and therefore, the appeal is dismissed and counsel's motion to withdraw is granted.

It is ordered that appellant pay the costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, JUDGE

EMANUELLA D. GROVES, J., CONCURS AND CONCURS WITH THE SEPARATE CONCURRING OPINION;
MICHELLE J. SHEEHAN, P.J., CONCURS (WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, P.J., CONCURRING:

{¶ 22} I concur with the majority opinion based upon the facts of this case. I recognize the precedent from the court authorizing the use of Anders briefs in custody and parental rights cases. *See, e.g., In re J.P.S.*, 2023-Ohio-3151 (8th Dist.); *In re E.G.*, 2023-Ohio-2305 (8th Dist.); *In re J.L.*, 2020-Ohio-5254 (8th Dist.). I write separately, however, to express my concern regarding the court's continued acceptance of Anders briefs in custody and parental rights cases. Several of our sister courts have previously determined that they will not accept Anders briefs in custody and parental rights cases. *See In re J.M.*, 2013-Ohio-5896 (1st Dist.); *In re N.C.*, 2019-Ohio-567 (2d Dist.); *In matter of K.M.*, 2020-Ohio-350 (5th Dist.); *In re B.H.*, 2018-Ohio-1238 (6th Dist.); *In re A.L.*, 2022-Ohio-4095 (10th Dist.). I share the concerns raised by these districts regarding the heavily fact-dependent nature of parental rights cases and the requirement of expedited resolution of these matters makes these cases particularly ill-suited to the Anders procedure on appeal. As aptly stated by the First District:

> Our holding is in no way meant to discount the magnitude of the parental rights at stake in a permanent-custody case. Instead, we recognize that permanent-custody proceedings implicate a parent's fundamental due- process rights and, as such, parents must be afforded substantial procedural protections. We find, however, that a parent's rights would be better protected where counsel is compelled to search the record and present arguments for review.
>
> The records in termination proceedings are typically extensive and highly fact-based. Anders review in a permanent-custody case places an inordinate burden on the appellate court to scour the voluminous record searching for error, a task that we are ill-equipped to perform without the active and meaningful assistance of counsel. It is far more beneficial to the court and to the client for appellate counsel, who has

> necessarily reviewed the record in full, to brief the merits of the case
> and set forth arguments for the court's consideration.

*In re J.M* at ¶ 15-16 (internal citations omitted).

{¶ 23} The termination of parental rights is often referred to as "the family law equivalent of the death penalty in a criminal case." *See, e.g., In re J.B.*, 2013-Ohio-1704, ¶ 66 (8th Dist.); *In re E.G.*, 2023-Ohio-2305, ¶ 28 (8th Dist.) Accordingly, I believe that a parent's rights would be better protected where appellate counsel is compelled to search the record in full and present arguments for merit review in an expedited manner. *In re J.M.* at ¶ 15; *see also In re R.S.*, 2022-Ohio-4387, ¶ 55-56 (8th Dist.) (S. Gallagher, J., concurring in judgment only) (urging the court to revisit use of Anders briefs in parental rights cases); *State v. Sims*, 2019-Ohio-4975, ¶ 37-73 (8th Dist.) (Boyle, J., dissenting) (objecting to continued acceptance of Anders briefs in criminal context); *In re S.G.*, 2020-Ohio-4060, ¶ 34 (8th Dist.) (Boyle, J., dissenting) (elaborating that her objections in *State v. Sims* applied to "all situations where appointed counsel files an Anders brief").