[Cite as *In re N.C.*, 2025-Ohio-2012.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE N.C., :

                            No. 114690

Minor Child :

[Appeal by D.T., Father] :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 5, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23901915

---

### *Appearances:*

Victor Chukwudelunzu, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* Cuyahoga County Division of Children and Family Services.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant D.T. ("father") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that awarded permanent custody of his minor child N.C. ("N.C." or "the child") to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") and

terminated all parental rights.[1]  After a careful review of the record, we affirm the juvenile court's decision.

{¶ 2}  The child originally was placed in the emergency custody of CCDCFS on November 9, 2022, when the child was less than two weeks old.  After an initial complaint could not be resolved within the statutory time frame, CCDCFS refiled a complaint on February 13, 2023, alleging the child to be dependent and requesting temporary custody to the agency.  Following a hearing, the child was committed to the predispositional temporary custody of CCDCFS.

{¶ 3}  In May 2023, the child was adjudicated to be dependent; thereafter, the child was committed to the temporary custody of CCDCFS.  Though mother and father engaged in case-plan services, the agency had significant concerns that remained.  On September 25, 2023, CCDCFS filed a motion to modify temporary custody to permanent custody.  In May 2024, father filed a motion for an extension of temporary custody.  In November 2024, mother filed a motion for legal custody to herself.

{¶ 4}  Trial was held in November 2024.  At that time, the child was two years old and was in the care of the maternal grandfather.  The juvenile court heard testimony from multiple witnesses and accepted evidence in the case.  The child's guardian ad litem recommended permanent custody to CCDCFS.  On December 9, 2024, the juvenile court journalized a judgment entry in which it made requisite

---

[1] A separate appeal was filed by A.C., who is the mother of N.C., in the companion case, *In re N.C.*, 8th Dist. Cuyahoga No. 114646.  We only address father's appeal herein.

statutory findings and granted CCDCFS's motion to modify temporary custody to permanent custody. The juvenile court committed the child to the permanent custody of the agency and terminated all parental rights. Father's appeal is now before us.

{¶ 5} Under his first assignment of error, father claims the juvenile court erred and abused its discretion in finding it would be in the best interest of the child to grant permanent custody to CCDCFS. Though father refers to an abuse-of-discretion standard, the Supreme Court of Ohio has found that the abuse-of-discretion standard does not apply when reviewing a permanent-custody decision and that "the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review" are the proper appellate standards of review, depending on the argument presented. *In re Z.C.*, 2023-Ohio-4703, ¶ 11. Here, the substance of father's argument challenges the juvenile court's decision as being against the manifest-weight of the evidence. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 6} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the

child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.* at ¶ 7, quoting R.C. 2151.414(B)(1). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 7} "[T]he best interests of the child are paramount in any custody case[,]" and courts are to liberally interpret the statutes under R.C. Chapter 2151 "to provide for the care and protection of the child . . . ." *In re A.B.*, 2006-Ohio-4359, ¶ 32, citing R.C. 2151.01(A). R.C. 2151.414(D) sets forth the factors a juvenile court is to consider in determining the best interest of a child in a permanent-custody hearing. Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child at a permanent-custody hearing, a juvenile court "shall consider all relevant factors, including, but not limited to," the factors listed thereunder. "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56.

{¶ 8} In this case, even though the juvenile court determined that the factor under R.C. 2151.414(B)(1)(d) applies, the record shows that CCDCFS asserted in its motion that "the condition listed in R.C. 2151.414(B)(1)(a) exists and that one or more of the factors listed in R.C. 2151.414(E) apply to the parents of the child at

issue." Consistent with CCDCFS's reliance on R.C. 2151.414(B)(1)(a), the juvenile court found under R.C. 2151.414(E) that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." The juvenile court found multiple factors under R.C. 2151.414(E) were met, and the record supports a determination by clear and convincing evidence that R.C. 2151.414(B)(1)(a) applies. Therefore, despite the juvenile court's mistaken finding that R.C. 2151.414(B)(1)(d) applies, we find the judgment is nevertheless correct. *See In re T.T.*, 2024-Ohio-2914, ¶ 14-17 (8th Dist.). The finding under R.C. 2151.414(B)(1)(a) is not disputed by father.

{¶ 9} Father's challenge focuses on the juvenile court's best-interest determination. The record shows that the juvenile court considered all relevant best-interest factors, including the enumerated factors under R.C. 2151.414(D)(1)(a)-(e), which are specifically set forth in the court's decision. The juvenile court included the finding pursuant to R.C. 2151.414(E) and found the factors under R.C. 2151.414(E)(1), (2), (14), and (16) applied, with the (E)(2) and (16) factors applicable to father. The juvenile court included findings, among others, that father "has displayed aggressive behavior towards CCDCFS employees, has been alleged by everyone close to mother to have a physically and mentally abusive relationship with her, and is alleged to have [recently] hit his child at a recent supervised visitation with CCDCFS present[;]" and that he has "failed to show a demonstrated benefit from [case-plan] services." Ultimately, in this case, the

juvenile court determined "by clear and convincing evidence that it is in the best interest of the child to be placed in the permanent custody of the CCDCFS."

{¶ 10} While father points to certain testimony favorable to him, the juvenile court weighed all relevant factors in rendering its decision. The testimony and evidence show that that there were anger-management and substance-abuse concerns with father. Also, the alleged domestically violent relationship between mother and father was a concern throughout the pendency of the proceedings, and there was circumstantial evidence of their suspected ongoing relationship. Though father engaged in treatment to address his substance-abuse issues, he was inconsistent with completing his drug screens, he tested positive for cocaine in May 2024, and his sobriety date was July 12, 2024. Father was not always consistent with visitation, and his visits were suspended after he put the child at risk while engaging in aggressive behavior toward an agency worker. Though supervised visitation was reinstated in October 2024, there was testimony that during a visit, father became visibly frustrated and angered when the child was having a temper tantrum. The caseworker testified that the child did not view father as an authoritative figure and that father hit the child and stated he "can whoop [his child.]" At the time of trial, father was living with his grandfather and was looking for his own home.

{¶ 11} Other testimony and evidence were provided demonstrating valid concerns as to both father and mother, including as to mother's ability to protect herself and N.C. There was testimony showing that the child was doing well in the

maternal grandfather's home and the child was well-bonded with the maternal grandfather. The guardian ad litem for the child recommended permanent custody to CCDCFS, indicating a variety of compelling reasons. At the time of trial, the child had been in the custody of CCDCFS for over two years, and the child needed a safe, stable, and permanent home environment.

{¶ 12} Despite father's arguments otherwise, the record supports the juvenile court's best-interest determination. Even though father completed certain case-plan services, as the juvenile court determined, he failed to demonstrate significant progress or a benefit from those services. Indeed, a parent's successful completion of a case plan does not preclude a grant of permanent custody to a social services agency. *See In re C.C.*, 2010-Ohio-780, ¶ 25 (8th Dist.), citing *In re J.L.*, 2004-Ohio-6024 (8th Dist.). The juvenile court properly determined in accordance with R.C. 2151.414(D)(1) that an award of permanent custody to the agency was in the child's best interest. Additionally, although the juvenile court did not make an explicit finding under R.C. 2151.414(D)(2), its decision demonstrates that all of the R.C. 2151.414(D)(2) factors were met, in which case permanent custody is necessarily in the best interest of the child.

{¶ 13} After carefully reviewing the entire record, we do not find the juvenile court clearly lost its way or committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of the child to CCDCFS. We are not persuaded by father's arguments otherwise. We

conclude that the juvenile court's judgment is not against the manifest weight of the evidence. Accordingly, father's first assignment of error is overruled.

{¶ 14} Under his second assignment of error, father challenges the juvenile court's "reasonable-efforts" determination under R.C. 2151.419.

{¶ 15} "Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *In re C.F.*, 2007-Ohio-1104, ¶ 29, quoting R.C. 2151.01(A). With limited exception, an agency must make reasonable efforts toward family reunification during child-custody proceedings prior to the termination of parental rights. *Id.* at ¶ 43. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.*

{¶ 16} In this case, the juvenile court made a reasonable-efforts finding at numerous stages of the proceedings. In the decision granting permanent custody to CCDCFS, the juvenile court again made a reasonable-efforts finding, stating as follows:

> The Court further finds that reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family include: The mother was referred for parenting, mental health, and domestic violence. The father was referred for substance abuse, basic needs, and anger management.

{¶ 17} The juvenile court's finding is consistent with the record and supported by the evidence presented at trial. "The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case." *In re A.F.*, 2021-Ohio-4519, ¶ 35 (8th Dist.), citing *In re D.H.*, 2021-Ohio-3984, ¶ 58 (5th Dist.). Father's second assignment of error is overruled.

{¶ 18} Under his third assignment of error, father claims the juvenile court's decision violated his due process rights. Though father claims the juvenile court violated his fundamental right to parent his child, it is well established that the government has broad authority to intervene to protect a child's health or safety. *See In re C.F.*, 2007-Ohio-1104, at ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 2014-Ohio-4558, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Therefore, "[j]uvenile courts are afforded broad discretion in fashioning a disposition following the adjudication of a child as being abused, neglected, or dependent, because the courts are charged with protecting the best interests of children." *In re R.G.M.*, 2024-Ohio-2737, ¶ 16, citing R.C. 2151.353(A). Upon our review of the record in this matter, we find the juvenile court acted in accordance with the best interest and ultimate welfare of the child. Father's third assignment of error is overruled.

**{¶ 19}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EMANUELLA D. GROVES, P.J., and
MARY J. BOYLE, J., CONCUR